IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MICHAEL ALLEN THARP, *et al.*,

Plaintiffs,

v. CIVIL NO.: WDQ-11-3202

CHRISTOPHER WILLIAM COLAO, *et al.*

Defendants.

* * * * * * * * * * * * *

CHRISTOPHER WILLIAM COLAO,

Third-Party Plaintiff,

v.

TNT SUZUKI & MARINE SALES & SERVICE, *et al.*,

Third-Party Defendants.

* * * * * * * * * * * * *

MEMORANDUM OPINION

Michael and Jamie Tharp (collectively, "the Tharps") sued Christopher Colao and others for negligence and other claims. For the following reasons, TNT Suzuki and Marine Sales and Service's ("TNT") motions to dismiss and for reconsideration will be granted.[1]

---

[1] TNT's request for a hearing, ECF No. 26, will be denied as unnecessary. *See* Local Rule 105.6.

I. Background[2]

On August 18, 2010, the rear driver's side tire of Colao's 2006 Chevrolet Avalanche truck ("the Chevy") came off the truck as he was driving on Interstate 695, crossed the median, and hit Michael Tharp's car, which was traveling in the opposite direction. ECF No. 20 ¶¶3-5. Michael Tharp was "catastrophic[ally] injured" in the collision. *Id.* ¶6.

Colao bought the Chevy from TNT in 2010 in Billings, Montana. ECF No. 11-2 ¶4. He listed his Maryland address on the purchase documents and indicated that he learned about TNT from a newspaper. *Id.* at 3, 5.

TNT sells and services new and used automobiles, trucks, and boats, and advertises in print, radio, and television, but only in the Billings, Montana area. *Id.* ¶3. TNT maintains a website, www.tntsuzuki.com. *Id.* at 3. Customers may view TNT's inventory, ask TNT to locate a car for them, apply for an auto loan, and schedule auto service on the website. *See* www.tntsuzuki.com (accessed May 21, 2012).

On November 10, 2011, the Tharps, Pennsylvania residents, sued Colao, a Maryland resident, in this Court for negligence

[2] For the motion to dismiss for lack of personal jurisdiction, "the [C]ourt must take all disputed facts and reasonable inferences in favor of the plaintiff[s]." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

and loss of consortium. ECF No. 1. They sought $1 million. *Id.* at 2. On December 12, 2011, Colao answered the complaint, denying liability. ECF No. 4.[3]

On December 20, 2011, Colao filed a third-party complaint against TNT and Chuck's Auto Service.[4] ECF No. 6. On January 26, 2012, TNT moved to dismiss the third-party complaint for lack of personal jurisdiction. ECF No. 11. Colao opposed the motion. ECF No. 24.

On February 1, 2012, the Tharps moved to amend their complaint to join TNT, Chuck's Auto Service, and Catonsville Car Care Center, Inc.[5] ECF No. 18. Colao's counsel, Eugene Connor, Jr., Esq., consented to the Tharps' motion to file the amended complaint. *Id.* ¶9. The third-party defendants were not consulted, although they were parties. *See id.* That day, the

[3] The answer, in its entirety, states:

> Christopher William Colao, Defendant, by his attorney, Eugene B. Connor, Jr., hereby answers the Plaintiffs' Complaint as follows:
> 1. The Defendant did not commit the wrongs alleged.
> 2. The claims of the Plaintiffs are barred by contributory negligence.
> 3. The claims of the Plaintiffs are barred by assumption of risk.

ECF No. 4.

[4] Chuck's Auto Service inspected the Chevy before the accident. ECF No. 6 ¶2.

[5] Catonsville Care Car Center may have serviced the Chevy. ECF No. 18 ¶4.

Court granted the Tharps' motion as unopposed, and the amended complaint was filed. ECF Nos. 19, 20.

On February 6, 2012, TNT moved for reconsideration of the Court's order allowing the Tharps to join TNT as a defendant in the amended complaint. ECF No. 22. The motion was not opposed.

II. Analysis

A. Standard of Review

The Court may dismiss a complaint unless the plaintiffs can prove personal jurisdiction by a preponderance of the evidence.[6] When, as here, the Court decides the issue without an evidentiary hearing, "the plaintiff[s] need prove only a *prima facie* case of personal jurisdiction." *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). "In deciding whether the plaintiff[s] ha[ve] made the requisite showing, the [C]ourt must take all disputed facts and reasonable inferences in favor of the plaintiff[s]." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

---

[6] *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); Fed. R. Civ. P. 12(b)(2). Personal jurisdiction may be general or specific. General jurisdiction requires the defendant's "continuous and systematic" contacts with the forum state. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). Specific jurisdiction requires that the defendant's "contacts relate to the cause of action and create a substantial connection with the forum state." *Id.* Colao does not argue that the Court has general jurisdiction over TNT. *See* ECF No. 24.

However, the Court need not "credit conclusory allegations or draw farfetched inferences."[7]

A federal district court may assert specific personal jurisdiction over a non-resident when the exercise of jurisdiction is (1) authorized by the forum state's long-arm statute, and (2) consistent with due process.[8]

1. Statutory Authority

Maryland's long-arm statute limits jurisdiction to claims "arising from any act enumerated [in the statute]." Md. Code, Cts. & Jud. Proc. § 6-103(a). Under subsection (b)(1) of the statute, a defendant who "transacts any business" in Maryland is subject to jurisdiction here. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Although a defendant need not engage in "commerce or . . . transactions for profit,"[9] "Maryland courts have construed the phrase 'transacting business' narrowly,

---

[7] *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, *1 (4th Cir. May 30, 2000) (*citing Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

[8] *Carefirst of Md., Inc.*, 334 F.3d at 396. In Maryland, the "statutory inquiry merges with [the] constitutional inquiry," because "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.* at 396-97. A plaintiff must still specify which provisions of the long-arm statute provide for personal jurisdiction over the defendant. *See Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811-12 & n.7 (D. Md. 2010); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

[9] *Novack v. Nat'l Hot Rod Ass'n*, 231 A.2d 22, 26 (Md. 1967).

requiring, for example, significant negotiations or intentional advertising and selling in the forum state."[10]  Although a defendant need not have been physically present in Maryland,[11] the plaintiff must show "some purposeful act in Maryland in relation to one or more of the elements of [the] cause of action."[12]

Under subsection (b)(4), a defendant who "causes tortious injury in [Maryland] . . . by an act or omission outside [Maryland]" is subject to jurisdiction here if the defendant "engages in . . . [a] persistent course of conduct" in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4).  "The 'persistent course of conduct' standard . . . is not tantamount to establishing general jurisdiction, but does require greater contacts than those necessary to establish jurisdiction under

---

[10] *Music Makers Holdings, LLC v. Sarro*, Case No. RWT-09-1836, 2010 WL 2807805, at *3 (D. Md. July 15, 2010).

[11] *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 313 (D. Md. 2007).

[12] *Talegen Corp. v. Signet Leasing & Fin. Corp.*, 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995); *see also Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006) (although it was "arguable that [the] [d]efendant [had] performed work or service in Maryland," jurisdiction under subsection (b)(1) was improper because "the cause of action [did] not arise from that work or service"); *Bond v. Messerman*, 873 A.2d 417, 430 (Md. Ct. Spec. App. 2005) ("The fact that [the defendant] [had] referred his client to [a Maryland hospital] ha[d] no bearing as to the jurisdictional issue because that referral [was] in no way connected to [the plaintiff's] cause of action against [the defendant].").

subsection (b)(1)."[13] When "[t]he contacts listed in [sub]section (b)(4) . . . [do] not arise from or relate to the plaintiff[s'] cause of action,"[14] "the defendant's contacts to the forum must be extensive, continuous, and systematic."[15] Maryland courts have refused to exercise jurisdiction under this provision even when defendants have engaged in extensive electronic communications with someone in Maryland,[16] operated a website used by Maryland residents,[17] or advertised in Maryland.[18]

---

[13] *Am. Ass'n of Blood Banks v. Boston Paternity, LLC*, Case No. DKC-08-2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009).

[14] *Bass v. Energy Transp. Corp.*, 787 F. Supp. 530, 534 (D. Md. 1992).

[15] *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 236 (D. Md. 1992) (internal quotation marks omitted).

[16] *See Gallman v. Sovereign Equity Grp., Inc.*, Case No. AW-11-2750, 2012 WL 983937, at *6 (D. Md. March 21, 2012) (New Jersey resident did not engage in a persistent course of conduct in Maryland when she "communicated electronically and telephonically with a Maryland individual over a period of six months as part of a much larger transaction that only tangentially involved Maryland").

[17] *Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676, 683-84 (D. Md. 2011) (Nebraska non-profit corporation did not engage in a persistent course of conduct in Maryland even though its members included Maryland residents and its website was accessible in Maryland; the plaintiff had not shown that the corporation targeted a Maryland audience or derived substantial revenue from Maryland).

[18] *Camelback Ski Corp. v. Behning*, 539 A.2d 1107 (Md. 1988), *cert. denied*, 488 U.S. 849 (1988) (defendant did not engage in a persistent course of conduct in Maryland when it sent a representative to Maryland one time, its ski resort was listed in a commercial publication distributed in the Washington, D.C.-

2. Due Process

Due process requires that the defendant have "minimum contacts" with the State such that maintaining the suit "does not offend 'traditional notions of fair play and substantial justice.'"[19] In determining whether the exercise of specific personal jurisdiction comports with due process, a court traditionally considers, *inter alia,* "the extent to which the defendant has purposefully availed [himself] of the privilege of conducting activities in the state." *Carefirst of Md., Inc.*, 334 F.3d at 397.

Under the "effects" test, a court may also assert jurisdiction over a non-resident defendant who has "expressly aimed" his tortious conduct at the forum state, knowing that the injury would be felt there. *Calder v. Jones*, 465 U.S. 783, 789 (1984). However, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due

---

Baltimore area, it had a toll-free number accessible to Marylanders, and it sent brochures to Maryland residents and businesses upon request); *Jafarzadeh v. Feisee*, 776 A.2d 1, 3-4 (Md. Ct. Spec. App. 2001) (Virginia doctor did not engage in a persistent course of conduct in Maryland despite being licensed in Maryland, receiving about $462 in Maryland Medicaid payments over two years, and advertising in the Persian-American Yellow Pages, which were distributed in Maryland).

[19] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980).

Interpreting *Calder*'s "effects" test narrowly,[20] the Fourth Circuit has held that the propriety of jurisdiction over an out-of-state defendant depends on "the defendant's own contacts with the state," not where the plaintiff feels the alleged injury. *ESAB Grp., Inc.*, 126 F.3d at 626 (*citing Calder*, 465 U.S. at 789).

3. Internet Presence

In the Internet context, Maryland may only "exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."[21] "[A] person who simply places information on the Internet does not subject himself to jurisdiction in each State in which the electronic signal is transmitted and received."[22] When the Internet activity involves

---

[20] *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997).

[21] *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (*citing Calder*, 465 U.S. at 789-90).

[22] *ALS Scan, Inc.*, 293 F.3d at 714 (Georgia internet service

posting information on a website, the question is whether the defendant "manifested an intent to direct [his] website content . . . [to the forum state's] audience."[23]

B. Personal Jurisdiction over TNT

Colao contends that the Court should exercise jurisdiction over TNT because TNT solicits business on its website, which Maryland citizens might have accessed. ECF No. 24 at 5. This does not establish a *prima facie* case for personal jurisdiction over TNT. *ALS Scan*, 293 F.3d at 714.[24]

---

provider was not subject to personal jurisdiction in Maryland when it provided bandwidth to Georgia company to create a website and send information over the internet but did not "select or knowingly transmit infringing photographs to Maryland with the intent of engaging in business or any other transaction in Maryland").

[23] *Young*, 315 F.3d at 263 (Connecticut newspapers were not subject to jurisdiction in Virginia court when they wrote articles about a Virginia prison but did not target a Virginia audience).

[24] Colao's reliance on *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) is misplaced. As Judge Bredar recently noted, *McIntyre* rejects a foreseeability standard of personal jurisdiction and "merely affirms the status quo" of personal jurisdiction. *Windsor v. Spinner Indus. Co., Ltd.*, 825 F. Supp. 2d 632, 638 (D. Md. 2011).

The four-justice plurality--Justices Kennedy, Scalia, and Thomas, and Chief Justice Roberts--in *McIntyre* concluded that New Jersey could not exercise personal jurisdiction consistent with the Due Process Clause over an English manufacturer which had no contacts with New Jersey, although it marketed and sold its products in the United States. 131 S. Ct. at 2790 (plurality). Justice Breyer, who was joined by Justice Alito, concurred in the judgment but noted that Supreme Court precedent might not address personal jurisdiction in an internet context,

That a car is "mobile by its very design and purpose," and will foreseeably reach the forum state, does not create minimum contacts for the seller in that state. *World-Wide Volkswagen*, 444 U.S. at 295. Similarly, that a website is, "by its very design and purpose," *id.*, accessible in Maryland, does not show that the website's owner has "purposefully availed [himself] of the privilege of conducting activities in the state," *Carefirst of Md., Inc.*, 334 F.3d at 397.

Further, the defendant's "web presence . . . is immaterial" when, as here, the allegedly tortious conduct is unrelated to the website. *Windsor v. Spinner Indus. Co., Ltd.*, 825 F. Supp. 2d 632, 639 (D. Md. 2011).[25] Colao bought the Chevy in Billings, from TNT's store; he did not buy or learn about it from TNT's

---

but those issues "are totally absent in this case." 131 S. Ct. at 2793 (Breyer, J., concurring).

As a plurality decision, *McIntyre*'s holding is "that position taken by those Members who concurred in the judgments on the narrowest grounds," and carries precedential weight if the plurality and concurring opinions have substantial overlap. *Marks v. United States*, 430 U.S. 188, 193 (1977); *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002).

[25] In *Windsor*, Judge Bredar held the defendant's motion in abeyance and permitted an evidentiary hearing on personal jurisdiction, based on another argument--that the defendant's distributor marketed its products and had a regular course of sales in Maryland. 825 F. Supp. 2d at 639. The evidentiary hearing did not consider the defendant's website. *See Windsor v. Spinner Indus. Co., Ltd.*, 825 F. Supp. 2d 640, 643 (2011) (dismissing the defendant for lack of personal jurisdiction, after an evidentiary hearing).

website. ECF No. 11-2 at 5. Thus, the exercise of jurisdiction would require that TNT's contacts with Maryland be "extensive, continuous, and systematic."[26] TNT's sole contacts with Maryland are: (1) one customer from Maryland--Colao--bought one truck at TNT's Billings, Montana store, and (2) Maryland residents can access TNT's website. This does show TNT's purposeful availment or manifested intent to do business in Maryland. *See Young*, 315 F.3d at 263.

Colao has not proven a *prima facie* case for personal jurisdiction over TNT.

C. Colao's Request for Discovery

Colao asked the Court to hold the motion to dismiss in abeyance for 60 days for jurisdictional discovery. ECF No. 24 at 5.

"[W]hether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 216 n.3 (4th Cir. 2002). Discovery is inappropriate when "the pleadings contain[] no specific facts that could establish" the requisite contacts with Maryland.[27]

---

[26] *Nichols*, 783 F. Supp. at 236.

[27] *Mylan Labs, Inc.*, 2 F.3d at 64; *see also Carefirst of Maryland, Inc.*, 334 F.3d at 402 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdic-

Here, the third-party complaint contains no facts showing any contacts with Maryland. The opposition to the motion to dismiss also provides no facts that could establish personal jurisdiction over TNT.

D. TNT's Unopposed Motion for Reconsideration

TNT has also moved for reconsideration of the Court's order permitting the Tharps to join TNT as a defendant. ECF No. 22. The motion is unopposed.

Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[28] Fed. R. Civ. P. 54(b). When warranted, the district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am.*

---

tional discovery."); *Haley Paint Co. v. E.I. DuPont De Nemours & Co.*, 775 F. Supp. 2d 790, 799-800 (D. Md. 2011 ("jurisdictional discovery cannot simply be a fishing expedition")).

[28] Under Rule 60(b), a court may grant relief from a judgment or final order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b). *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991); *Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, *4 (D. Md. Oct. 27, 2009). A Rule 54(b) motion may properly ask the Court to change its mind.

*Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Resolution of the motion is "committed to the discretion of the district court," *Id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

Although TNT was an "opposing party[]" when the Tharps moved to file the amended complaint,[29] it did not consent to the amendment or have the chance to object. In light of the Court's determination that it lacks personal jurisdiction over TNT, the Court will grant TNT's unopposed motion for reconsideration of the order permitting Tharp to join TNT as a defendant and dismiss the amended complaint against TNT. ECF No. 22.

III. Conclusion

For the reasons stated above, TNT's motions to dismiss and for reconsideration will be granted. The amended and third-party complaints will be dismissed against it.

5/31/12
Date

William D. Quarles, Jr.
United States District Judge

---

[29] *Cf. Moser v. Tex. Trailer Corp.*, 623 F.2d 1006, 1011 (5th Cir. 1980) ("'Rule 15 permits the requested amendment at this time only by leave of court or by written consent of the adverse party.'" (*quoting Banks v. Hanover Steamship Corp.*, 43 F.R.D. 374, 380 (D. Md. 1967)).